## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| CHARLES DONELSON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13-1523 |
| RICHARD HARRINGTON, | ) |
| Defendant. | ) |

# O R D E R  &  O P I N I O N

This matter is before the Court on Petitioner Charles Donelson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondent filed an Answer to the Petition (Doc. 19), to which Petitioner filed a Reply (Doc. 23). In his Petition, Donelson challenges the determination by an Adjustment Committee at Pontiac Correctional Center to revoke one year of good conduct credit on the basis of two incidents that occurred while he was incarcerated at Western Illinois Correctional Center. He alleges that the decision violated his due process rights as articulated in *Wolff v. McDonnell*, 418 U.S. 539 (1974) because he did not have the opportunity to call witnesses and because the revocation was not based on "some evidence." As explained below, the Petition is denied. Petitioner procedurally defaulted his first claim by failing to comply with established procedures for calling witnesses, and the Illinois state court did not unreasonably apply clearly established federal law in concluding that the revocation of time credit was based on some evidence.

## BACKGROUND

Petitioner is serving a fifty-year sentence for first degree murder, home invasion, and aggravated sexual assault. He is currently incarcerated at the Pontiac Correctional Center, where he is in the custody of the Illinois Department of Corrections. (Doc. 19 at 1). He filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 21, 2013. (Doc. 1).

This Petition emerges from two disciplinary incidents that occurred while Petitioner was incarcerated at the Western Illinois Correctional Center. The incidents are described in two disciplinary reports, the first of which was filed on July 12, 2011 (Doc. 119-1 at 2), and the second of which was filed on July 14, 2011 (*Id.* at 3).

According to the incident report and disciplinary report filed after the first incident, Petitioner attempted to leave the "R1 B-wing" at approximately 8:20 a.m. without being properly dressed. (*Id.* at 1). When Officer Jimmie Watson ordered Petitioner to show his identification and to move away from the wing's doorway, Petitioner initially refused to comply. (*Id.* at 2). When he did comply, Petitioner told Officer Watson, "I'll fix you . . . I'll have your job, bitch." (*Id.* at 1). This incident was documented by an incident report dated July 11, 2011. (*Id.*). Petitioner received a disciplinary report on July 12, 2011. (*Id.* at 2).

According to the disciplinary report filed after the second incident, Petitioner's second disciplinary incident occurred approximately one hour later. (*Id.* at 3). The report states that Petitioner sidestepped Officers Roberts and Pool as the R1-B wing door was closing and ran towards Officer Watson. He "drew back his

right arm with a closed fist and swung his right arm around striking Watson in the left facial area." (*Id.*). Petitioner continued to strike Watson until he was restrained by two responding officers. (*Id.* at 4). This assault disrupted "normal operating procedures of the facility" and the wing "was . . . placed on a Level 1 Lockdown." (*Id.*). The incident was documented in a disciplinary report, which Petitioner received on July 14, 2011. (*Id.*). There is no incident report for this incident on the record.

Both disciplinary reports that Petitioner received included a detachable bottom section in which Petitioner could identify witnesses that he wished the disciplinary review board, known as the Adjustment Committee, to consider calling. (*See id.* at 2-4). The report instructs the recipient to "Detach and Return [it] to the Adjustment Committee or Program Unit Prior to the Hearing" and includes spaces for inmates to print names of witnesses and describe the facts to which the witness can testify. (*Id.*).

Petitioner completed those sections on each form, but did not detach them or return them. (*See id.*). On the first, he requested the "R1-B wing camera" as a witness, and noted it would show that "he was on the wing, control officer open door." He also listed "Leamon/Cox" as witnesses, and indicated that they could testify that he "did not hold the door," that he "was talking to C/O Roberts," and that he "gave C/O my ID." He indicated they would also testify that Petitioner "did not say a word to Watson" and testify that "Watson has been harassing" Petitioner for two-months. (*Id.* at 2). On the second, he listed the "R1 B-wing camera" and "Phone recordings" as witnesses. (*Id.* at 3). He indicated that the R1 B-wing camera"

3

would show that Roberts and Pool were "blocking the door," and that "Watson was threatening to assault me all hours." (*Id.*). The phone recordings would show that he "ran for the door for a Lieutenant since C/O Roberts would not call one. I was assaulted." (*Id.*).

Shortly after the incident, Petitioner was transferred to Pontiac Correctional Center, where his Adjustment Committee hearing took place on July 20, 2011. (*Id.* at 5). Petitioner pleaded not guilty, and the Adjustment Committee found him guilty of "assaulting any person, insolence, unauthorized movement, and disobeying a direct order." (*Id.*). He was disciplined with a one-year demotion to C-grade status, one-year segregation, revocation of a one-year good-conduct credit, one-year audio/visual restriction, and six months of contact visit restriction. (*Id.* at 6). The Adjustment Committee's report states that Petitioner did not request any witnesses. (*Id.*). The Committee repeated the accounts set forth in both disciplinary reports as the basis for its decision. (*Compare id.* at 5 *with id.* at 2-4). However, it only referenced attached "DC 434 incident reports" as part of the basis, but did not reference the disciplinary reports. (*Id.* at 5).

Petitioner filed an Offender's Grievance on August 15, 2011. In it, he argued that the Adjustment Committee did not comply with procedural due process safeguards because the witnesses he requested on the disciplinary reports were not brought before the Adjustment Committee and its decision was not supported by "some evidence." (*Id.* at 7-8). In response to Petitioner's grievance, a Grievance Officer recommended that the grievance be denied because "no witnesses were requested" and the findings were supported by the facts presented. (*Id.* at 9). The

4

Chief Administrative Officer, Randy Pfister, Warden of the Pontiac Correctional Center, approved the recommendation. (*Id.*). Petitioner then appealed to the Director of the Illinois Department of Corrections, S.A. Godinez, on September 20, 2011, who denied Petitioner's appeal. (*Id.* at 11).

Following this denial, Petitioner filed a pro se complaint for mandamus relief, a writ of certiorari, and a declaratory judgment against Pfister and Godinez on February 9, 2012. The complaint alleged that that the Adjustment Committee violated his due process rights by failing to allow his timely witness requests or provide a reason for their exclusion and for failing to base its decision on "some evidence." (*Id.* at 12-15, 21-24).

The trial court dismissed the complaint on August 14, 2012, (*Id.* at 38), and Petitioner appealed. The Illinois appellate court affirmed the trial court, concluding that petitioner's due process rights were not violated. (*Id.* at 80, 86-87). The appellate court concluded that Petitioner's witness claim was foreclosed because he did not comply with the procedure for requesting witnesses when he failed to return the witness request slips. (*Id.* at 86). It also concluded that the July 12 and July 14 disciplinary reports, on their own, provided "some evidence" upon which the Committee based its decision. (*Id.* at 87). The Illinois Supreme Court denied Petitioner's leave to appeal the appellate court's decision on September 25, 2013. (*Id.* at 103). Petitioner then filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

5

## LEGAL STANDARDS

A federal district court may hear a petition for writ of habeas corpus relief by a person in state custody only on the grounds that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner must "fairly present" each claim by including both the controlling operative facts and legal principles at each level of the state court system. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009).

"When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Richardson*, 745 F.3d at 268 (quoting *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A state law ground is independent when the state court "actually relied on the procedural bar as an independent basis for its disposition of the case" and is adequate "when it is a firmly established and regularly followed state practice." *Smith v. Mckee*, 598 F.3d 374, 384 (7th Cir. 2010). A petitioner's claim is "procedurally defaulted" if the state court relies on procedural state law to dismiss the claim. *Kaczmarek*, 627 F.3d at 591. A procedurally defaulted constitutional claim will not be considered by a federal court unless the petitioner "can establish cause and prejudice for the default or that the failure to consider the claim would result in a fundamental miscarriage of justice." *Id.* A "cause" is "an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." *Smith v. Mckee*, 598 F.3d 374,

382 (7th Cir. 2010)(internal quotation omitted). "Prejudice" is "an error which so infected the entire trial that the resulting conviction violates due process." *Id.* Finally, a "fundamental miscarriage of justice" occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Moore v. Casperson*, 345 F.3d 474, 484 (7th Cir. 2003) (internal quotations omitted).

For claims that are not procedurally defaulted, a federal court may not grant relief on claims that have been adjudicated on the merits by state courts unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or rested on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Accordingly, a petitioner must show that the state court's ruling on his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law" as stated in Supreme Court decisions, or "confronts a set of facts that are materially indistinguishable from" those of a prior Supreme Court case and yet reaches a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is not contrary to federal law if it identifies and affirms the principles of the relevant Supreme Court precedent. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

7

To be an "unreasonable application" of federal law, the state court determination must be more than simply incorrect, it must be unreasonable as that term is widely understood in the law. *See Williams*, 529 U.S. at 410-11. A state court's application of federal law is reasonable if it is "at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). Further, "it is not an unreasonable application of clearly established federal law for a state court to decline to apply a specific legal rule that has not been squarely established" by the Supreme Court. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks omitted).

## DISCUSSION

In his § 2254 Petition, Petitioner raises two grounds for relief. The first ground is that that the Adjustment Committee violated his due process rights when it improperly denied his request for witnesses. The second ground is that the Adjustment Committee violated his due process rights when it found that he had assaulted a staff member without the required "some evidence."

Respondent concedes that Petitioner has exhausted his state court remedies. (Doc. 19 at 6-7). Respondent argues that Petitioner procedurally defaulted his first ground for relief by failing to request witnesses in the manner established by regulation. Respondent argues that Petitioner is not entitled to relief on his second ground because the state court adjudicated it on the merits and the decision was not contrary to or an unreasonable application of federal law.

## I. *Denial of Witnesses*

Petitioner's first ground for relief is that the Adjustment Committee improperly denied his request to call witnesses at his disciplinary hearing. Federal habeas review of this claim is procedurally barred. Petitioner failed to comply with procedural requirements for calling witnesses at the Adjustment Committee hearing, and the Illinois appellate court relied upon this adequate and independent state law ground when it denied Petitioner's mandamus petition on this ground.

### A. *Inmates' Due Process Rights to Call Witnesses in Adjustment Proceedings*

Under established Supreme Court precedent, inmates have a liberty interest in time credits earned for good conduct. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). They therefore enjoy certain procedural due process rights in disciplinary proceedings that may deprive them of such time credits, such as the right to call witnesses and present documentary evidence. *Id.* at 566.

However, the right is not absolute. "[P]rison officials are granted a great deal of leeway in addressing inmates' request for witnesses." *Whitlock v. Johnson*, 153 F.3d 380, 386 (7th Cir. 1998). This is because "[t]he operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff*, 418 U.S. at 566. Therefore, prison officials may deny inmates the right to call witnesses "[s]o long as the reasons are logically related to preventing undue hazards to institutional safety or correctional goals." *Ponte v. Real*, 471 U.S. 491, 497 (1985).

The Seventh Circuit has indicated that prisons should generally make individualized determinations when deciding to deny inmates' requests to call witnesses, *Whitlock*, 153 F.3d at 386, but allows prisons to exclude classes or

categories of witnesses when "the prison officials demonstrate that the reasons for excluding the class apply with equal force to all potential witnesses falling within that category." *Id.* at 387.

Illinois has established through regulation adjustment committee hearing procedures that comport with *Wolff*. *See* 20 Ill. Adm. Code 504.80. Pursuant to the regulations, inmates may request witnesses at disciplinary hearings by complying with the procedure for submitting witness request slips in each living unit. *See id.* at 504.80(h)(3). If the witness requests are not received prior to the hearing, the Committee may disapprove them. *Id.* If the Committee receives a timely request for a witness and denies it, the regulations require that it provide a written reason. *Id.* at 504.80(h)(4). In this way, the Committee is given the necessary discretion to allow inmates to call witnesses or deny requests for witnesses.

### B. Petitioner's Procedural Default

Petitioner claims that the Adjustment Committee denied him the right to call witnesses, but Petitioner did not follow the procedure that the Committee provided to call witnesses. Each disciplinary report that Petitioner received included a section that allows inmates to list witnesses who they would like to appear at the hearing before the Adjustment Committee and explain the witness's testimony. (Doc. 19-1 at 2). The text of the disciplinary report directs inmates to detach and return the paper to the Adjustment Committee prior to the hearing. (*Id.*). Although Petitioner completed both forms, he failed to detach and return witness requests for each of his disciplinary reports. (*Id.* at 85-86).

When a state court fails to reach the merits of a federal claim because of past procedural error, those claims are said to be procedurally defaulted. *Kaczmarke*, 627 F.3d at 591. Procedural default ordinarily forecloses federal habeas review because it provides a ground that is independent of the federal question and adequate to support the judgment. *See Richardson*, 745 F.3d at 268.

Ordinarily, procedural default occurs in federal court or state court, at trial or on appeal. *Sanchez v. Miller*, 792 F.2d 694, 698 (7th Cir. 1986). However, the Seventh Circuit has concluded that Petitioners can procedurally default claims at "the forum initially available" to them. *Id.* In the case of state inmates, the forum that is initially available is the Adjustment Committee proceeding established by regulations. *See id.* Therefore, just as a criminal defendant can procedurally default certain claims by failing to raise them in appropriate ways at trial, a state inmate can procedurally default other claims by failing to raise them in appropriate ways in a disciplinary hearing. *See id.* When Petitioner failed to detach and return his witness requests, he failed to follow procedural requirements established by regulation. *See* 20 Ill. Adm. Code 504.80(h)(3).

The Illinois appellate court resolved Petitioner's action for mandamus on this ground. It held that because Petitioner failed to follow the Department's rules for requesting witnesses, he was not entitled to mandamus relief. (Doc 19-1 at 86). The appellate court, therefore, relied upon a procedural bar as an independent basis for its dismissal of Petitioner's claim. *See Smith v. McKee*, 598 F.3d 374, 384 (7th Cir. 2010).

This independent procedural ground for dismissing Petitioner's claim was also adequate. A state law ground is adequate "when it is a firmly established and regularly followed state practice." *Id.* The regulations governing Adjustment Hearings have been in place since 2003. *See* 20 Ill. Adm. Code 504.80. Petitioner also received notice of the procedural requirements each time he was subjected to disciplinary proceedings as an inmate. *See Ford v. Georgia*, 498 U.S. 411, 423 (holding that a petitioner's failure to comply with a procedural requirement can thwart review when the petitioner was appraised of the requirement and the requirement has existed for some time).

Petitioner argues that his past experience proves that the Adjustment Committee does not regularly follow this practice, nor is it firmly established. He points to past occasions in which he was able to call witnesses at Adjustment Committee hearings even though he failed to comply with the required procedures and instead followed the procedures he followed in this case. (Doc. 23 at 6 (arguing that in the past, "Petitioner submitted his witness request the same way on the form and it was accepted. Respondent knows this.")). If the regulations posed mandatory consequences for a failure to comply with procedures and Adjustment Committees regularly failed to impose them, perhaps Petitioner would have a point. *See, e.g.*, *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964) (refusing to apply procedural bar when state court had never previously applied it with the "pointless severity" shown in the case). However, the regulations at issue provide a great deal of discretion to the Adjustment Committee. *See* 20 Ill. Adm. Code

504.80(h)(3)("The Committee may disapprove witness requests that are not received prior to the hearing.").

The Supreme Court has held that state law grounds are not inadequate when they are discretionary. *See Beard v. Kindler*, 558 U.S. 53, 60 (2009). It reasoned that holding otherwise "would pose an unnecessary dilemma for the States" because it would force them to choose between finality and flexibility. *See id*. The same reasoning that *Beard* applied to state court proceedings applies here to Adjustment Committee hearings. As the Supreme Court and Seventh Circuit have held, prison staff must be able to exercise discretion when handling requests for witnesses. *See, e.g., Whitlock*, 153 F.3d at 386. If the Court held that the state's past discretionary decision to allow Petitioner to call witnesses in spite of his failure to comply with administrative procedures was an inadequate procedural bar, it would undermine this necessary discretion and replace it with stringent rules that are more likely to be unfavorable to inmates than the current rule. *See Beard*, 558 U.S. at 60.

Finally, Petitioner has not excused his failure to comply with the required procedures. Petitioners may excuse procedural default when they show "cause for and prejudice from" the default. *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002). Petitioner has not provided any reasons that he failed to detach and submit his witness request form as required other than an argument that he was not required to submit proposed witnesses in such a way in the past. This is not a valid cause for procedural default, as it simply provides an excuse for not following the rule.

Because Petitioner failed to request witnesses in compliance with the Adjustment Committee's established procedures, and because the last state court to

13

articulate a reason for dismissing the case did so by relying upon this failure, Petitioner procedurally defaulted his first claim and his petition was not properly filed. *See Brooks*, 279 F.3d at 522.

## II. *Some Evidence*

Petitioner's second ground for habeas relief is that the Adjustment Committee's revocation of his good time credit was not supported by "some evidence." (Doc. 1 at 6). The Due Process Clause requires that prison disciplinary board findings be supported by "some evidence." *Superintendent, Mass. Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff,* 418 U.S. at 563-67). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

Petitioner claims that there is no evidence that he assaulted any staff in the incident report filed by Officer Watson. (*See* Doc. 19-1 at 1-2). Based on language in its final summary report, he also argues that the Adjustment Committee only relied upon Officer Watson's reports in deciding to revoke one year of good time credit. (*See Id.* at 5 ("Based on the observation of the reporting employee Watson.")). He therefore asserts that the Adjustment Committee did not rely upon any evidence in finding that he assaulted a staff member.

Because the Illinois appellate court addressed the merits of this claim, the Court reviews its decision to see if it is contrary to or involves an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d). In this case, the Illinois appellate court's decision was neither contrary to nor an unreasonable application of prevailing federal law. Therefore, Petitioner is not entitled to relief.

14

The Illinois appellate court's decision was not contrary to controlling federal law. In this case, the Illinois appellate court cited to state regulations rather than Supreme Court precedent, but the result was the same because the regulations are consistent with the Supreme Court's precedent. Under controlling Supreme Court precedent, there is "some evidence" if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. In Illinois, the "some evidence" standard is codified. Regulations require that the Adjustment Committee "be reasonably satisfied there is some evidence that the offender committed the offense for the individual to be found guilty." 20 Ill. Adm. Code 504.80(j)(1). The Illinois appellate court relied upon this articulation of the some evidence standard, and then applied a Seventh Circuit case applying *Hill*. (*See* Doc. 19-1 at 88, citing *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999)). Because the rule that the Illinois court applied did not contradict governing law as stated in Supreme Court decisions, it is not contrary to controlling federal law. *See Williams*, 529 U.S. at 405-06.

The Illinois Court's decision was also not an unreasonable application of federal law, as it is "consistent with the facts and circumstances of the case." *See Hennon*, 109 F.3d at 335. In determining whether a state court unreasonably misapplied controlling precedent, a habeas court must "determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 131 S Ct. 770, 786 (2011).

15

The Illinois court's decision is hardly an unreasonable application of federal law. Under *Hill*, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." 472 U.S at 455-56. The court noted that the Adjustment Committee "indicated it read the reports and then provided the bases for its decision in finding plaintiff guilty of the alleged offenses." (Doc. 19-1 at 87). The Illinois state court concluded that a "disciplinary report alone provides 'some evidence' for the disciplinary decision where the report describes the incident in sufficient detail." (*Id.*, citing *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999)).

This analysis is consistent with the record in front of this Court. In his disciplinary report, Officer Lindsey wrote:

> On the above date and approximate time C/O ROBERTS, and C/O POOL walked onto R1 B wing to lock the wing up for 9:30 AM lock up time. C/O WATSON was sitting at the foyer office desk, as WATSON was assigned to R1 Foyer. As the wing door was closing, I/M DONELSON R02278 quickly sidestepped around C/O's ROBERTS and POOL and ran off of B wing and into the foyer. Once into the foyer, DONELSON ran directly towards C/O WATSON drew back his right arm with a closed fist and swung his right arm around striking WATSON in the left facial area, before WATSON could get out of the chair and onto his feet. DONELSON continued to swing closed fist punches striking C/O WATSON several times in the facial area, causing C/O WATSON and I/M DONELSON to both fall to the floor, where DONELSON continued his assault on C/O WATSON.

(Doc. 19-1 at 3)

Officer Lindsey's report is cited in the Adjustment Committee's report (*See id.* at 5 (listing Incident Officer as "Lindsey, Matthew W" and Location as "WIL-R1 House Foyer Area"), and the entire second paragraph of the Adjustment Committee's Final

Summary Report quotes heavily from Officer Lindsey's report. (*Compare id. with id.* at 3).

Therefore, the Court concludes that the Illinois state court did not unreasonably apply federal law. Some evidence only requires "a modicum of evidence," and only requires that disciplinary boards rely on a record that "is not so devoid of evidence that [its findings are] without support or otherwise arbitrary." *See Hill*, 472 U.S. at 457. The Illinois court did not act unreasonably (in fact, it acted quite reasonably) in concluding that the record from Petitioner's Adjustment Committee hearing contained some evidence that he committed an assault, and that the Committee relied upon that evidence. Therefore, Petitioner's petition is denied with respect to the second ground for relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(1), a petitioner may only appeal from the court's judgment in his habeas case if he obtains a certificate of appealability. A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner need not show that the appeal will succeed, but he must show "'something more than the absence of frivolity' or the existence of mere

17

'good faith'" on his part. *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate. Fed. R. App. P. 22(b)(1).

Based on the record before it, the Court cannot find that reasonable jurists would debate that Petitioner's claims are meritless. Accordingly, a certificate of appealability is denied.

## CONCLUSION

IT IS THEREFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) is DENIED. The Court DECLINES to issue a certificate of appealability.

CASE TERMINATED.

Entered this 16th day of October, 2014.

                                                 s/Joe B. McDade
                                                 JOE BILLY McDADE
                                       United States Senior District Judge