**E-FILED**
Tuesday, 20 December, 2016  02:51:56 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| CHARLES DONELSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.   1:13-cv-01523-JBM |
| | ) | |
| RANDY PFISTER, Warden | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER & OPINION

This matter is before the Court on Petitioner Charles Donelson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, which was denied by this Court and the Seventh Circuit Court of Appeal's remand of the same to this Court. (Docs. 1, 32, & 56). For the reasons stated below, the Court has complied with the mandate of the Court of Appeals and Petitioner's § 2254 Petition is denied again.

### BACKGROUND

Petitioner is serving a fifty-year sentence for first degree murder, home invasion, and aggravated sexual assault. (Doc. 19 at 1).  He is currently incarcerated at the Pontiac Correctional Center, where he is in the custody of the Illinois Department of Corrections. *Id*. He filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 21, 2013. (Doc. 1).

### A. THE DISCIPLINARY INCIDENTS AND PRISON DISCIPLINARY PROCESS

This Petition emerges from two disciplinary incidents that occurred while Petitioner was incarcerated at the Western Illinois Correctional Center. (Doc. 19 at

2). The incidents are described in two disciplinary reports, the first of which was filed on July 12, 2011 (Doc. 19-1 at 2), and the second of which was filed on July 14, 2011. (Doc. 19-1 at 3).

According to the incident report and disciplinary report filed after the first incident, Petitioner attempted to leave the "R1 B-wing" at approximately 8:20 a.m. without being properly dressed. *Id.* at 1. When Officer Jimmie Watson ordered Petitioner to show his identification and to move away from the wing's doorway, Petitioner initially refused to comply. *Id.* at 2. When he did comply, Petitioner told Officer Watson, "I'll fix you . . . I'll have your job, bitch." *Id.* at 1. This incident was documented by an incident report dated July 11, 2011. *Id.* Petitioner received the disciplinary report for the first incident on July 12, 2011. *Id.* at 2.

Petitioner received another disciplinary report for a second incident occurring on July 11, 2011. *Id.* at 3. According to this disciplinary report, Petitioner's second disciplinary incident occurred approximately one hour after the first incident. *Id.* The report states that Petitioner sidestepped Officers Roberts and Pool as the R1-B wing door was closing and ran towards Officer Watson. *Id.* He "drew back his right arm with a closed fist and swung his right arm around striking Watson in the left facial area." *Id.*  Petitioner continued to strike Watson until he was restrained by two responding officers. *Id.* at 4. This assault disrupted "normal operating procedures of the facility" and the wing "was . . . placed on a Level 1 Lockdown." *Id.* Petitioner received this disciplinary report on July 14, 2011. *Id.*

Both disciplinary reports that Petitioner received included a detachable bottom section in which Petitioner could identify witnesses that he wished the disciplinary

review board, known as the Adjustment Committee, to call. *See id.* at 2-4. The report instructs the recipient to "Detach and Return [it] to the Adjustment Committee or Program Unit Prior to the Hearing" and includes spaces for inmates to print names of witnesses and describe the facts to which the witness can testify. *Id.* at 3.

Petitioner completed those sections on each form, but did not detach them. *See id.* Instead, Petitioner asserts that he copied the entire form and returned the form to the Adjustment Committee. *Id.* at 22. On the first disciplinary report, he requested the "R1-B wing camera" as a witness, and noted it would show that "he was on the wing, control officer open door." *Id.* at 2. He also listed "Leamon/Cox" as witnesses, and indicated that they could testify that he "did not hold the door," that he "was talking to C/O Roberts," and that he "gave C/O my ID." *Id.* He indicated they would also testify that Petitioner "did not say a word to Watson" and testify that "Watson has been harassing" Petitioner for two-months. *Id.*  On the second report, he listed the "R1 B-wing camera" and "Phone recordings" as witnesses. *Id.* at 3. He indicated that the R1 B-wing camera" would show that Roberts and Pool were "blocking the door," and that "Watson was threatening to assault me all hours." *Id.* The phone recordings would show that he "ran for the door for a Lieutenant since C/O Roberts would not call one. I was assaulted." *Id.*

Shortly after the incident, Petitioner was transferred to Pontiac Correctional Center, where his Adjustment Committee hearing took place on July 20, 2011. *Id.* at 5. Petitioner pleaded not guilty, and the Adjustment Committee found him guilty of "assaulting any person, insolence, unauthorized movement, and disobeying a direct order." *Id.* He was disciplined with a one-year demotion to C-grade status, one-year

segregation, revocation of a one-year good-conduct credit, one-year audio/visual restriction, and six months of contact visit restriction. *Id.* at 6. The Adjustment Committee's report states that Petitioner did not request any witnesses. *Id.* The Committee repeated the accounts set forth in both disciplinary reports as the basis for its decision. *Compare id.* at 5 *with id.* at 2-4.

Petitioner filed an Offender's Grievance on August 15, 2011. *Id.* at 7. In it, he argued that the Adjustment Committee did not comply with procedural due process safeguards because the witnesses he requested on the disciplinary reports were not brought before the Adjustment Committee and its decision was not supported by "some evidence." *Id.* at 7-8. In response to Petitioner's grievance, a Grievance Officer recommended that the grievance be denied because "no witnesses were requested" and the findings were supported by the facts presented. *Id.* at 9. The Chief Administrative Officer, Randy Pfister, Warden of the Pontiac Correctional Center, approved the recommendation. *Id.* Petitioner then appealed to the Director of the Illinois Department of Corrections, S.A. Godinez, on September 20, 2011, who denied Petitioner's appeal. *Id.* at 11.

## B. STATE HABEAS PROCEEDINGS

Following this denial, Petitioner filed a pro se complaint in state court for mandamus relief, a writ of certiorari, and a declaratory judgment against Pfister and Godinez on February 9, 2012. *Id.* at 12. The complaint alleged that that the Adjustment Committee violated his due process rights by failing to allow his timely witness requests or provide a reason for their exclusion and for failing to base its decision on "some evidence." *Id.* at 12-15, 21-24.

The trial court dismissed the complaint on August 14, 2012, and Petitioner appealed. *Id.* at 38. The Illinois appellate court affirmed the trial court, concluding that petitioner's due process rights were not violated. *Id.* at 80, 86-87. The appellate court concluded that Petitioner's witness claim was foreclosed because he did not comply with the procedure for requesting witnesses when he failed to return the witness request slips. *Id.* at 86. It also concluded that the July 12 and July 14 disciplinary reports, on their own, provided "some evidence" upon which the Committee based its decision. *Id.* at 87. The Illinois Supreme Court denied Petitioner's leave to appeal the appellate court's decision on September 25, 2013. *Id.* at 103.

### C. FEDERAL HABEAS PROCEEDINGS

Petitioner then filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 21, 2013. (Doc. 1). In his Petition, he brought forth two arguments. *Id.* First, Petitioner argued that the Adjustment Committee violated his due process rights by improperly denying his witness requests. *Id.* at 5. Second, Petitioner argued that the Adjustment Committee violated his due process rights when it found that he assaulted a staff member without the required "some evidence." *Id.* at 6.

This Court denied the Petition. (Doc. 32). This Court found that there was an "adequate and independent state law ground" for the state court's denial because the Illinois appellate court declared that Petitioner had procedurally defaulted his witness claims by failing to detach the witness request slip and return it. *Id.* at 9-10.

This Court also determined that the state court's application of the "some evidence" standard was reasonable. *Id*. 10-13.

Petitioner appealed both decisions to the United States Court of Appeals for the Seventh Circuit. (Doc. 35). The Seventh Circuit affirmed in part and reversed in part this Court's decision. (Doc. 56). The Seventh Circuit affirmed this Court's finding that the state court's application of the "some evidence" standard was reasonable. *Id*. at 7. However, the Seventh Circuit found that the procedural default was not an "adequate and independent state law ground," because they found no "Illinois law, regulation, or precedent requiring inmates, on penalty of loss of their right to be heard, to detach and submit only the bottom portion of the form." *Id*. at 8. Because the Seventh Circuit could not determine whether the procedural error was harmless error, they remanded the Petition to this Court for further proceedings. *Id*. at 11.

Upon remand, Respondent filed a Supplemental Answer. (Doc. 63). In which, Respondent presented two arguments. *Id*. First, Respondent argued that Petitioner has failed to prove that he properly submitted the witness request paperwork. *Id*. at 6-7. Second, Respondent argued that Petitioner is collaterally estopped from arguing that he did not assault a staff member because a jury found him guilty of assaulting a correctional officer in a state court proceeding that arose directly from the second event. *Id*. at 8-11. After granting Petitioner's several requests for additional time to respond, Petitioner filed a "Motion to Stand on his Original Petition and Traverse." (Doc. 71). In this motion, Petitioner notes that he has received Respondent's Supplemental Answer but that he wants to stand on his original Petition and Traverse and he will not supplement it. *Id*.

### D.  STATE CRIMINAL PROCEEDINGS

While Petitioner was seeking state and federal habeas review of the disciplinary proceedings, the State of Illinois brought charges against Petitioner based on the second incident. (Doc. 72).  In 2012, the State of Illinois charged Petitioner with Aggravated Battery based on the second incident. *Id*. On September 30, 2015, after a three day trial, a jury found Petitioner guilty of Aggravated Battery, in violation of 720 ILCS 5/12-3.05(d)(4). (Doc. 72-2).

During the trial, Petitioner presented a full defense, which was similar to the defense he has consistently put forth during his administrative appeals, state habeas proceedings, and federal habeas petition. (Doc. 78). Petitioner argued that he and Officer Watson had had a series of altercations during the six months before the two incidents and that Petitioner had previously filed several grievance reports against Officer Watson. *Id*. at 117-50. Petitioner argued that during the first incident, he went to talk to Officer Roberts, who was off the wing and in the foyer. *Id*. at 151-52. In order to do so, a control officer had to unlock the door to allow Petitioner to speak to Officer Roberts. *Id*. at 153. Petitioner asserts that Officer Watson then came over to them and started yelling at him to get back on his wing. *Id*. at 154, 158.

Petitioner argued that second incident occurred after he called his family to tell them to call the Warden and the police about what was happening. *Id*. at 160. Then, Petitioner argued that he saw several of the other officers talking with Officer Watson. *Id*. at 171. After which, Petitioner claimed that both Officer Pool and Roberts stood before him and told him to go into the foyer. *Id*. at 171-72. Petitioner

claims that he could not see Officer Watson in the foyer (and he should have been able to see him), so he got nervous about the whole situation and started to run because of fear. *Id.* at 171-73. Petitioner's arguments in trial were very similar to those he had been asserting throughout his habeas petition. *Compare id.* at 117-73 *with* Doc. 19-1 at 19-20.

During his state trial, Petitioner was able to present or otherwise use the evidence, the absence of which he claims caused him to be denied due process during his disciplinary hearing, including presenting evidence from witnesses, video tapes, and audio tapes.

One of the witnesses Petitioner requested for his hearing was Inmate Cox. During his trial, Petitioner attempted to call Inmate Cox as a witness; however, the court was unable to find him and issue a writ for his appearance in time. (Doc. 78 at 30). Therefore, the court allowed Petitioner to make an offer of proof about Inmate Cox's testimony. After the offer of proof, the Court allowed a statement written by Inmate Cox to be entered as testimony during trial, in lieu of his appearance. *Id.* at 33-35; 108-09. The state court judge read the statement:

> "Cox states he saw CO Watson get Donelson's ID early. And there was a verbal exchange between Watson and Donelson; states Watson told Donelson to step back, and Donelson said he was on the wing and Watson again said, step back. Cox states later he heard Donelson say, he is threatening me; get a lieutenant. And said this four or five times to the other correctional officers. [Cox s]tates later, Donelson again said, he is threatening me and keeps threatening me. Cox states he never heard Correctional Officer Watson threaten Donelson, only that there was a verbal exchange between them at the door. Cox states he was by Cell 75 when he saw Donelson talking to the two officers on B-wing. Then Donelson ran off B-wing towards the clerk; states when he got downstairs, Donelson was on the ground and Correctional Officer Roberts and Pool were restraining the upper half of Donelson's body while Watson was trying to restrain Donelson's legs. Cox states Watson

8

> was giving Donelson thigh strikes with Watson's knee. Then other staff
> came in and took control of Donelson's legs and bent his knees up."

*Id.* at 108-109. The court allowed the testimony although it did not appear to help either side "too much." *Id.* at 32. Furthermore, Petitioner could not offer proof that Inmate Cox would provide any additional information because Petitioner never spoke directly to Inmate Cox about the incident. *Id.* at 33-35.

Additionally, Petitioner was able to address both the video and audio recordings he requested. Petitioner admitted that he was told that there was no video recording of the incident. *Id.* at 167. Additionally, Petitioner's attorney argued that the lack of video evidence should be used against the state:

> "There were, I believe, two cameras in each wing. Are we to believe that
> the cameras are there for a purpose to monitor activity and they have
> no recording of what took place out there? Give me a break. We never
> got it because they say it doesn't exist. It was asked for. But does that
> not give you pause that the defendant has been taken advantage of and
> that the People have not proved him guilty beyond a reasonable doubt?
> Does that give you reasonable doubt pause?"

*Id.* at 255-56. Additionally, Petitioner referenced the disk of phone call recordings during his cross-examination. *Id.* at 198 (responding to the District Attorney "You got the disk of the phone calls. You can listen to them"). Although both sides had copies of the recordings, neither party entered them into evidence. (Doc. 72-2 at 20-21).

After three days of trial, a jury convicted Petitioner of Aggravated Battery. *Id.* at 1. In order to do so, they needed to find three elements beyond a reasonable doubt. *Id.* at 15. First, the jury needed to find that "the defendant intentionally and knowingly made physical contact of an insulting or provoking nature with Officer

9

Jimmie Watson." *Id*. Second, the jury needed to find that "the defendant knew

Officer Jimmie Watson to be a correctional institution employee." *Id*. Third, the jury

needed to find that "Officer Jimmie Watson was engaged in the execution of official

duties."

### LEGAL STANDARDS

A federal district court may hear a petition for writ of habeas corpus relief by

a person in state custody only on the grounds that "he is in custody in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A § 2254

petition is the proper vehicle for contesting a loss of good time credit in state prison

disciplinary proceedings.[1] *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000)

(citations omitted). A petitioner must "fairly present" each claim by including both

the controlling operative facts and legal principles at each level of the state court

system. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); *Woods v. Schwartz*,

589 F.3d 368, 373 (7th Cir. 2009). Because the state courts did not reach the merits

of Petitioner's due process right to call witnesses and present video and audio

evidence claim, the Court reviews the issue *de novo*. *Harris v. Thompson*, 698 F.3d

609, 624 (7th Cir. 2012) (citing *Cone v. Bell*, 556 U.S. 449 (2009) (explaining that

---

[1] Although Petitioner's disciplinary proceedings resulted in a one-year demotion to C-grade status, one-year segregation, revocation of a one-year good-conduct credit, one-year audio/visual restriction, and six months of contact visit restriction, the Court focuses only on the loss of one year's good time. Habeas petitions are appropriate for challenging the length of confinement, not challenging the conditions of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). Therefore, the Court narrows Petitioner's habeas petition to challenging his loss of one year's worth of good time, because the rest of Petitioner's disciplinary consequences are conditions of his confinement.

because state courts knowingly did not address the constitutional claim, that the federal court could review the issue *de novo*).

## DISCUSSION

Although Plaintiff's due process rights were violated by the Western Illinois Correctional Center (WICC)'s failure to produce his witnesses and evidence or to provide an explanation for not doing so, the Court finds the error harmless.[2] Therefore, Petitioner's petition for writ of habeas corpus is denied.

## I.   DUE PROCESS RIGHTS

WICC's denial of Petitioner's witnesses, video, and audio evidence without an explanation was a violation of Petitioner's Due Process rights. Under established Supreme Court precedent, inmates have a liberty interest in time credits earned for good conduct. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Therefore, they enjoy certain procedural due process rights in disciplinary proceedings that may deprive them of such time credits, such as the right to call witnesses and present documentary evidence. *Id.* at 566.

However, the right is not absolute. "[P]rison officials are granted a great deal of leeway in addressing inmates' request for witnesses." *Whitlock v. Johnson*, 153 F.3d 380, 386 (7th Cir. 1998). This is because "[t]he operation of a correctional

---

[2] As the Court discusses below, the Court finds the due process violation harmless because Petitioner was convicted in state court of an identical crime. During his state court trial, Petitioner was able to present or otherwise use all of the evidence he was unable to use during his disciplinary proceedings. The state court proceeding was not available during the Court's first analysis, nor was it available upon appeal to the Seventh Circuit. Therefore, it was not part of any prior harmless error determination. The Court finds that there is now sufficient evidence to hold the due process errors harmless.

institution is at best an extraordinarily difficult undertaking." *Wolff*, 418 U.S. at 566. Therefore, prison officials may deny inmates the right to call witnesses "[s]o long as the reasons are logically related to preventing undue hazards to institutional safety or correctional goals." *Ponte v. Real*, 471 U.S. 491, 497 (1985).

The Seventh Circuit has indicated that prisons should generally make individualized determinations when deciding to deny inmates' requests to call witnesses, *Whitlock*, 153 F.3d at 386, but allows prisons to exclude classes or categories of witnesses when "the prison officials demonstrate that the reasons for excluding the class apply with equal force to all potential witnesses falling within that category." *Id.* at 387.

Illinois has established thorough adjustment committee hearing procedures that comport with *Wolff*. *See* 20 Ill. Adm. Code 504.80. Pursuant to the regulations, inmates may request witnesses at disciplinary hearings by complying with the procedure for submitting witness request slips in each living unit. *See id.* at 504.80(h)(3). If the witness requests are not received prior to the hearing, the Committee may disapprove them. *Id.* If the Committee receives a timely request for a witness and denies it, the regulations require that it provide a written reason. *Id.* at 504.80(h)(4). In this way, the Committee is given the necessary discretion to allow inmates to call witnesses or deny requests for witnesses.

Petitioner's Offender Disciplinary Report for the first incident clearly states that Petitioner requests "R1 B-Wing Camera" and "I/M Leamon/Cox" to show that he was on the wing. (Doc. 1-1 at 22). Petitioner's Offender Disciplinary Report for the second incident clearly states that Petitioner requests "R1 B-Wing Camera" and

"phone recordings" to show that Officer Watson was assaulting him at all hours and that he ran for the door for a lieutenant because Officers Roberts and Pool were blocking him and he was assault. (Doc. 19-1 at 3). Additionally, in Petitioner's written statement about the event, Petitioner ends his statement saying "See the Camera" and "Please look at the times listed." (Doc. 1-1 at 16).

Petitioner's due process rights were violated because he requested the witnesses and evidence and they were summarily denied without explanation. WICC has provided no explanation for denying Petitioner's witness requests. The Adjustment Committee Report and the Grievance Officer's Report simply read that no witness was requested. (Doc. 1-1 at 9, 21). Furthermore, the Adjustment Committee Report indicates that they received Petitioner's written statement, but does not reflect Petitioner's request for camera evidence that the written statement contained. (Doc. 19-1 at 5).  WICC gives no reasons for denying Petitioner's witness requests and his request to present video and audio evidence.

Instead, Respondent argues that Petitioner has not proven that he properly submitted the witness request. In support, Respondent provides a string of citations where courts affirmed disciplinary decisions because prisoners did not provide evidence to prove that they properly submitted the request. However, none of these cases are binding on this Court. Furthermore, this Court is not convinced of the feasibility of this argument. Petitioner has consistently alleged that he copied the disciplinary reports and turned a copy in. (Doc. 19-1 at 22). The Court is disinclined to put the burden of proving that he submitted the form onto the Petitioner. Petitioner

13

is in a poor position to prove that he properly submitted something, because he is confined as an inmate and he has limited access to resources.

The Court is likewise unconvinced that Petitioner simply forgot to submit the form, as Respondent alleges. (Doc. 63 at 7). As Respondent has previously argued, Petitioner has been subject to frequent disciplinary reports and subsequent litigation. (Doc. 19 at 10-11). Additionally, Petitioner asserts that he has been allowed to submit requests in this manner previously. (Doc. 23 at 6). Therefore, the Court finds it unlikely that Petitioner simply forgot to submit the request.

## II.    HARMLESS ERROR DOCTRINE

Although there was a violation of Petitioner's procedural due process rights, the Court finds that the Adjustment Committee would likely have reached the same result even with the additional evidence and, therefore, the procedural errors were harmless. The Court applies the harmless error analysis to prison disciplinary decisions. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003); *see also Hayes v. Thompson*, 637 F.2d 483, 493 (7th Cir. 1980) (applying harmless error analysis to reviews under 28 U.S.C. § 2254 challenges of prison disciplinary proceedings).

Because of the result of Petitioner's state court conviction for aggravated battery, the Court finds that the proposed witnesses and evidence would not have altered the Adjustment Committee's decision. The elements of Petitioner's state conviction were identical to the disciplinary violation he faced. By finding him guilty of aggravated battery, the jury found that Petitioner "intentionally and knowingly made physical contact of an insulting or provoking nature with" a correctional officer. (Doc. 72-2 at 15). In order for the Adjustment Committee to find him guilty of

14

"assaulting any person," the Committee had to find that Petitioner caused "a person, substance, or an object to come into contact with another person in an offensive, provocative, or injurious manner or fighting with a weapon." Ill. Adm. Code 20 § 504 App. A (2012).

Additionally, a criminal trial receives greater due process protections and carries a higher standard of proof than a prison disciplinary hearing. *Salazar v. Wilson*, 498 F. App'x 600, 603 (7th Cir. 2012). For the state conviction, the jury was required to find every element of aggravated battery beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 362 (1970). Whereas, the Adjustment Committee was only required to find every element of the disciplinary violation of assaulting any person by some evidence. *Superintendent, Mass. Corr. Ins. v. Hill*, 472 U.S. 445, 454 (1985). Petitioner has constantly asserted through these habeas claims that he did not commit these offense and these witnesses and video and audio evidence would prove it. Furthermore, Petitioner asserted the same argument as his defense. However, even with a higher standard of proof and the ability to present this evidence, the jury convicted Petitioner. Therefore, the Court finds that the due process violations are harmless because it is unlikely to have altered the Adjustment Committee's decision when it did not alter the jury's conviction.

Likewise, after reviewing the state court transcript, it does not appear that the missing evidence would have significantly helped Petitioner. First, as the state judge noted, Inmate Cox's testimony is not considerably useful for either party, especially because Cox did not see the beginning of the second incident. (Doc. 78 at 108-109). Second, Petitioner admitted that he was informed that there was no video evidence

15

of the incidents. *Id.* at 167. Lastly, although Petitioner had the audio recordings from that afternoon, he did not use it as evidence during the trial. (Doc. 72-2 at 21). Therefore, the Court finds that this evidence would not have been sufficient to alter the Adjustment Committee's decision. Likewise, the Court finds that the state jury conviction, after seeing this evidence, strengthens the finding that the due process violation was harmless because it would not have altered the Adjustment Committee's decision.

Additionally, the Court declines to hold an evidentiary hearing on the issue or remand for an additional disciplinary hearing because Petitioner would be collaterally estopped from arguing that he did not assault Officer Watson at said hearing. A federal court will apply the state's collateral estoppel law when determining whether a claim is precluded by a prior state judicial proceeding. *Guenther v. Holmgreen*, 738 F.2d 879, 883 (7th Cir. 1984); *see also Smith v. Sheahan*, 959 F. Supp. 841 (N.D. Ill. 1997) (explaining that it is appropriate to apply ordinary collateral estoppel rules when the criminal offense charged and proven closely tracks the civil allegation), *rev'd on other grounds*, 189 F.3d 529 (7th Cir. 1999). Under Illinois law, collateral estoppel precludes a party from relitigating an issue decided in a prior proceeding when four conditions have been met. *Am. Fam. Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000). First, the issue must be identical in both cases. *Id.* Second, there must be a final judgment on the merits in the prior adjudication. *Id.* Third, the party against whom estoppel is asserted must have been a party or must be in privity with a party in the prior action. *Id.* Fourth, the issue

must have been litigated in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation. *Id.*

The first condition has been met. As previously discussed, the state crime Petitioner was convicted of has identical elements to the disciplinary violation he received. The second condition is met when Petitioner received a sentence for his conviction. *Talarico v. Dunlap*, 667 N.E.2d 570, 573 (Ill. App. Ct. 1996) ("[Defendant] was convicted and sentenced, and that this was a final judgment…"). The third condition is clearly met because Petitioner was party to both proceedings. Lastly, the fourth condition is met because the issue of the whether Petitioner intentionally and knowingly made physical contact of an insulting or provoking nature with Officer Watson needed to be fully litigated and decided by the jury in order to convict Petitioner. Furthermore, Petitioner would have had a stronger incentive to fully litigate his state criminal trial, because a conviction for aggravated battery, in violation of 720 Ill. Comp. Stat. 5/12-3.05(d)(4), is a Class 2 Felony, which carries a minimum term of imprisonment of three (3) years. 730 Ill. Comp. Stat.  5/5-4.5-35 (2016). Whereas, his disciplinary conviction only resulted in the loss of one year's good time credit. Therefore, Petitioner had greater incentive to defend the criminal prosecution than he did his disciplinary hearing and applying collateral estoppel is appropriate.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(1), a petitioner may only appeal from the

court's judgment in his habeas case if he obtains a certificate of appealability. A certificate of appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner need not show that the appeal will succeed, but he must show "'something more than the absence of frivolity' or the existence of mere 'good faith'" on his part. *Miller-El v. Cockrell*, 537 U.S. 322, 337-38 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate. Fed. R. App. P. 22(b)(1).

Based on the record before it, the Court find that reasonable jurists would not debate that Petitioner's claims are meritless. Accordingly, a certificate of appealability is denied.

### CONCLUSION

IT IS THEREFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1) is DENIED. The Court declines to issue a certificate of appealability.

Petitioner's Motion to Stand on His Original Petition and Traverse is GRANTED.

Petitioner's outstanding motions (Docs. 57 & 62) are DISMISSED AS MOOT. CASE TERMINATED.

18

19

Entered this _20th_ day of December, 2016.

s/ Joe B. McDade

JOE BILLY McDADE

United States Senior District Judge
