UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CHARLES DONELSON, | ) |
| Petitioner, | ) |
| v. | ) Case No. 1:13-cv-01523-JBM |
| RANDY PFISTER, Warden | ) |
| Respondent. | ) |

## ORDER & OPINION

This matter is before the Court on Petitioner Charles Donelson's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, which was originally denied by this Court and the United States Court of Appeals for the Seventh Circuit's remand of the same to this Court. (Docs. 1, 32, & 56).

On December 20, 2016, the Court again denied Petitioner's Petition for Writ of Habeas Corpus because the Court found the procedural errors harmless, because Petitioner had been convicted of a similar crime in state court. (Doc. 80). On January 5, 2017, Petitioner filed a Motion to Alter or Amend Judgment because Petitioner's criminal state court proceedings had not been finalized. (Doc. 83). The Court stayed its reconsideration until Petitioner's state court proceedings had been resolved. (Text Order, Jan. 17, 2017). On January 30, 2017, the state court vacated Petitioner's state court proceedings. (Doc. 99-1).

The Court now grants Petitioner's Motion to Alter and Amend Judgement. (Doc. 83). The Court vacates its December 20, 2016 Order and its accompanied

Judgment. For the reasons stated below, the Court grants Petitioner's Petition for Writ of Habeas Corpus.

## I.  BACKGROUND

Petitioner is serving a fifty-year sentence for first degree murder, home invasion, and aggravated sexual assault. (Doc. 19 at 1). He is currently incarcerated at the Pontiac Correctional Center, where he is in the custody of the Illinois Department of Corrections. *Id.* He filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 21, 2013. (Doc. 1).

### A.  THE DISCIPLINARY INCIDENTS AND PRISON DISCIPLINARY PROCESS

This Petition emerges from two disciplinary incidents that occurred while Petitioner was incarcerated at the Western Illinois Correctional Center. (Doc. 19 at 2). The incidents are described in two disciplinary reports, the first of which was filed on July 12, 2011 (Doc. 19-1 at 2), and the second of which was filed on July 14, 2011. (Doc. 19-1 at 3).

According to the incident report and disciplinary report filed after the first incident, Petitioner attempted to leave the "R1 B-wing" at approximately 8:20 a.m. without being properly dressed. *Id.* at 1. When Officer Jimmie Watson ordered Petitioner to show his identification and to move away from the wing's doorway, Petitioner initially refused to comply. *Id.* at 2. When he did comply, Petitioner told Officer Watson, "I'll fix you . . . I'll have your job, bitch." *Id.* at 1. This incident was documented by an incident report dated July 11, 2011. *Id.* Petitioner received the disciplinary report for the first incident on July 12, 2011. *Id.* at 2.

Petitioner received another disciplinary report for a second incident occurring on July 11, 2011. *Id.* at 3. According to this disciplinary report, Petitioner's second disciplinary incident occurred approximately one hour after the first incident. *Id.* The report states that Petitioner sidestepped Officers Roberts and Pool as the R1-B wing door was closing and ran towards Officer Watson. *Id.* He "drew back his right arm with a closed fist and swung his right arm around striking Watson in the left facial area." *Id.* Petitioner continued to strike Watson until he was restrained by two responding officers. *Id.* at 4. This assault disrupted "normal operating procedures of the facility" and the wing "was . . . placed on a Level 1 Lockdown." *Id.* Petitioner received his disciplinary report for this incident on July 14, 2011. *Id.*

Both disciplinary reports that Petitioner received included a detachable bottom section in which Petitioner could identify witnesses that he wished the disciplinary review board, known as the Adjustment Committee, to call. *See id.* at 2-4. The report instructs the recipient to "Detach and Return [it] to the Adjustment Committee or Program Unit Prior to the Hearing" and includes spaces for inmates to print names of witnesses and describe the facts to which the witness can testify. *Id.* at 3.

Petitioner completed those sections on each form, but did not detach them. *See id.* Instead, Petitioner asserts that he copied the entire form and returned the form to the Adjustment Committee. *Id.* at 22. On the first disciplinary report, he requested the "R1-B wing camera" as a witness, and noted it would show that "he was on the wing, control officer open door." *Id.* at 2. He also listed "Leamon/Cox" as witnesses, and indicated that they could testify that he "did not hold the door," that he "was talking to C/O Roberts," and that he "gave C/O my ID." *Id.* He indicated they would

3

also testify that Petitioner "did not say a word to Watson" and testify that "Watson has been harassing" Petitioner for two-months. *Id.* On the second report, he listed the "R1 B-wing camera" and "Phone recordings" as witnesses. *Id.* at 3. He indicated that the "R1 B-wing camera" would show that Roberts and Pool were "blocking the door," and that "Watson was threatening to assault me all hours." *Id.* The phone recordings would show that he "ran for the door for a Lieutenant since C/O Roberts would not call one. I was assaulted." *Id.*

Shortly after the incident, Petitioner was transferred to Pontiac Correctional Center, where his Adjustment Committee hearing took place on July 20, 2011. *Id.* at 5. Petitioner pleaded not guilty, and the Adjustment Committee found him guilty of "assaulting any person, insolence, unauthorized movement, and disobeying a direct order." *Id.* He was disciplined with a one-year demotion to C-grade status, one-year segregation, one-year good time credit revocation, one-year audio/visual restriction, and six months of contact visit restriction. *Id.* at 6. The Adjustment Committee's report stated that Petitioner did not request any witnesses. *Id.* The Committee repeated the accounts set forth in both disciplinary reports as the basis for its decision. *Compare id.* at 5 *with id.* at 2-4.

Petitioner filed an Offender's Grievance on August 15, 2011. *Id.* at 7. In it, he argued that the Adjustment Committee did not comply with procedural due process safeguards because the witnesses he requested on the disciplinary reports were not brought before the Adjustment Committee and its decision was not supported by "some evidence." *Id.* at 7-8. In response to Petitioner's grievance, a Grievance Officer recommended that the grievance be denied because "no witnesses were requested"

4

and the findings were supported by the facts presented. *Id.* at 9. The Chief Administrative Officer, Randy Pfister, Warden of the Pontiac Correctional Center, approved the recommendation. *Id.* Then, on September 20, 2011, Petitioner appealed to the Director of the Illinois Department of Corrections, S.A. Godinez, who denied Petitioner's appeal. *Id.* at 11.

B.   STATE HABEAS PROCEEDINGS

Following this denial, Petitioner filed a pro se complaint in state court for mandamus relief, a writ of certiorari, and a declaratory judgment against Pfister and Godinez on February 9, 2012. *Id.* at 12. The complaint alleged that that the Adjustment Committee violated his due process rights by failing to allow his timely witness requests or provide a reason for their exclusion and for failing to base its decision on "some evidence." *Id.* at 12-15, 21-24.

The trial court dismissed the complaint on August 14, 2012, and Petitioner appealed. *Id.* at 38. The Illinois appellate court affirmed the trial court, concluding that petitioner's due process rights were not violated. *Id.* at 80, 86-87. The appellate court concluded that Petitioner's witness claim was foreclosed because he did not comply with the procedure for requesting witnesses when he failed to return the witness request slips. *Id.* at 86. It also concluded that the July 12 and July 14 disciplinary reports, on their own, provided "some evidence" upon which the Committee based its decision. *Id.* at 87. The Illinois Supreme Court denied Petitioner's leave to appeal the appellate court's decision on September 25, 2013. *Id.* at 103.

C.   FEDERAL HABEAS PROCEEDINGS

On October 21, 2013, Petitioner filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). In his Petition, he brought forth two arguments. *Id*. First, Petitioner argued that the Adjustment Committee violated his due process rights by improperly denying his witness requests. *Id*. at 5. Second, Petitioner argued that the Adjustment Committee violated his due process rights when it found that he assaulted a staff member without the required "some evidence." *Id*. at 6.

This Court denied the Petition. (Doc. 32). This Court found that there was an "adequate and independent state law ground" for the state court's denial because the Illinois appellate court declared that Petitioner had procedurally defaulted his witness claims by failing to detach the witness request slip and return it. *Id*. at 9-10. This Court also determined that the state court's application of the "some evidence" standard was reasonable. *Id*. 10-13.

Petitioner appealed both decisions to the United States Court of Appeals for the Seventh Circuit. (Doc. 35). The Seventh Circuit affirmed in part and reversed in part this Court's decision. (Doc. 56). The Seventh Circuit affirmed this Court's finding that the state court's application of the "some evidence" standard was reasonable. *Id*. at 7. However, the Seventh Circuit found that the procedural default was not an "adequate and independent state law ground," because they found no "Illinois law, regulation, or precedent requiring inmates, on penalty of loss of their right to be heard, to detach and submit only the bottom portion of the form." *Id*. at 8. Because

6

the Seventh Circuit could not determine whether the procedural error was harmless error, they remanded the Petition to this Court for further proceedings. *Id*. at 11.

Upon remand, Respondent filed a Supplemental Answer. (Doc. 63). In which, Respondent presented two arguments. *Id*. First, Respondent argued that Petitioner has failed to prove that he properly submitted the witness request paperwork. *Id*. at 6-7. Second, Respondent argued that Petitioner is collaterally estopped from arguing that he did not assault a staff member because a jury found him guilty of assaulting a correctional officer in a state court proceeding that arose directly from the second disciplinary incident. *Id*. at 8-11. After granting Petitioner's several requests for additional time to respond, Petitioner filed a "Motion to Stand on his Original Petition and Traverse." (Doc. 71). In this motion, Petitioner noted that he had received Respondent's Supplemental Answer but that he wanted to stand on his original Petition and Traverse and he would not supplement it. *Id*.

D.     **STATE CRIMINAL PROCEEDINGS**

While Petitioner was seeking state and federal habeas review of the disciplinary proceedings, the State of Illinois brought charges against Petitioner based on the second incident. (Doc. 72). In 2012, the State of Illinois charged Petitioner with Aggravated Battery based on the second incident. *Id*. On September 30, 2015, after a three day trial, a jury found Petitioner guilty of Aggravated Battery, in violation of 720 ILCS 5/12-3.05(d)(4). (Doc. 72-2).

During the trial, Petitioner presented a full defense, which was similar to the defense he had consistently put forth during his administrative appeals, state habeas proceedings, and federal habeas petition. (Doc. 78). Petitioner argued that

7

he and Officer Watson had had a series of altercations during the six months before the two incidents and that Petitioner had previously filed several grievance reports against Officer Watson. *Id*. at 117-50. Petitioner argued that during the first incident, he went to talk to Officer Roberts, who was off the wing and in the foyer. *Id*. at 151-52. In order to do so, a control officer had to unlock the door to allow Petitioner to speak to Officer Roberts. *Id*. at 153. Petitioner asserted that Officer Watson then came over to them and started yelling at him to get back on his wing. *Id*. at 154, 158.

Petitioner argued that the second incident occurred after he called his family to tell them to call the Warden and the police about what was happening. *Id*. at 160. Then, Petitioner argued that he saw several of the other officers talking with Officer Watson. *Id*. at 171. After which, Petitioner claimed that both Officer Pool and Roberts stood before him and told him to go into the foyer. *Id*. at 171-72. Petitioner claimed that he could not see Officer Watson in the foyer (and he should have been able to see him), so he got nervous about the whole situation and started to run because of fear. *Id*. at 171-73. Petitioner's arguments in trial were very similar to those he had been asserting throughout his habeas petition. *Compare id*. at 117-73 *with* Doc. 19-1 at 19-20.

During his state trial, Petitioner was able to present or otherwise use the evidence, the absence of which he claims caused him to be denied due process during his disciplinary hearing, including presenting evidence from witnesses, video tapes, and audio tapes. The court allowed a statement written by Inmate Cox to be entered as testimony during trial, in lieu of his appearance. (Doc. 78 at 33-35; 108-

09). Additionally, Petitioner was able to address both the video and audio recordings he requested. (Doc. 78 at 167 (admitting that Petitioner was told there was no video recording); (Doc. 78 at 198 (addressing the copies of the audio recordings)). After three days of trial, a jury convicted Petitioner of Aggravated Battery. (Doc. 72-2 at 1).

E.  **DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

On December 20, 2016, the Court denied Petitioner's Writ of Habeas Corpus. (Doc. 80). The Court found that there was a due process violation. The Court found that the error was harmless, because the proposed witnesses and evidence would not have altered the Adjustment Committee's decision. (Doc. 80 at 14). The Court noted that Petitioner's state court conviction had identical elements to Petitioner's disciplinary charges. (Doc. 80 at 14). The Court noted that Petitioner had greater due process protections in state court. (Doc. 80 at 15). Additionally, the Court noted that the burden of proof was greater for the state court conviction than the disciplinary proceedings. (Doc. 80 at 15). Therefore, because Petitioner was convicted in state court with access to the evidence, which he was denied in his disciplinary hearing, the Court found that the additional evidence would not have altered the Adjustment Committee's decision, which made it a harmless error. The Court then denied Petitioner's Petition for Writ of Habeas Corpus. (Doc. 80 at 14).

F.  **MOTION TO ALTER OR AMEND JUDGMENT**

On January 5, 2017, Petitioner filed a Motion to Alter or Amend Judgment of the Court's denial of his Petition. (Doc. 83). Petitioner asserted that there was not a final judgment in his state court conviction and asked the Court to reconsider its

9

decision. (Doc. 83 at 5). Because the state court conviction was still proceeding through post-trial motions, the Court issued an order staying the federal court proceedings until the state court proceedings had been resolved. (Text Order, Jan. 17, 2017).

On January 30, 2017, the Brown County Court found that Petitioner was unable to effectively communicate with his attorney during his trial. (Doc. 99-1). Therefore, the Brown County Court vacated the jury verdict and granted Petitioner a new state court trial. (Doc. 99-1). It is currently unknown whether the State's Attorney will retry petitioner. (Doc. 99).

Therefore, the Court lifted its stay of the federal court proceedings. (Text Order, Feb. 10, 2017). The Court will now consider Petitioner's Motion for Reconsideration and his Petition for Writ of Habeas Corpus.

## II. MOTION TO ALTER OR AMEND JUDGMENT

Because Petitioner's state court conviction was overturned, the Court grants Petitioner's Motion to Alter or Amend Judgment, pursuant to Federal Rule of Civil Procedure 59(e). In order to succeed on a Rule 59(e) Motion, the petitioner "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (citing *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)).

The Court denied Petitioner's Petition for Writ of Habeas Corpus because it found the due process error harmless in light of Petitioner's state court criminal conviction. The vacating of Petitioner's state criminal conviction is newly discovered

evidence, which could not have been previously presented. Therefore, the Court grants Petitioner's Motion to Alter or Amend Judgment. (Doc. 83).

### III.  PETITION FOR WRIT OF HABEAS CORPUS

A federal district court may hear a petition for writ of habeas corpus relief by a person in state custody only on the grounds that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A § 2254 petition is the proper vehicle for contesting a loss of good time credit in state prison disciplinary proceedings.[1] *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000) (citations omitted). A petitioner must "fairly present" each claim by including both the controlling operative facts and legal principles at each level of the state court system. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). Because the state courts did not reach the merits of Petitioner's due process right to call witnesses and present video and audio evidence claim, the Court reviews the issue *de novo*. *Harris v. Thompson*, 698 F.3d 609, 624 (7th Cir. 2012) (citing *Cone v. Bell*, 556 U.S. 449 (2009) (explaining that because state courts knowingly did not address the constitutional claim, that the federal court could review the issue *de novo*).

---

[1] Although Petitioner's disciplinary proceedings resulted in a one-year demotion to C-grade status, one-year segregation, revocation of a one-year good-conduct credit, one-year audio/visual restriction, and six months of contact visit restriction, the Court focuses only on the loss of one year's good time. Habeas petitions are appropriate for challenging the length of confinement, not challenging the conditions of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). Therefore, the Court narrows Petitioner's habeas petition to challenging his loss of one year's worth of good time, because the rest of Petitioner's disciplinary consequences are conditions of his confinement.

## IV. DISCUSSION

Petitioner's due process rights were violated by the Western Illinois Correctional Center (WICC)'s failure to produce his witnesses and evidence or to provide an explanation for not doing so. Because the Court cannot find that the error harmless, Petitioner's Petition for Writ of Habeas Corpus is granted and the Illinois Department of Corrections is instructed to either hold another disciplinary hearing or restore Petitioner's revoked good time credit.

### A. DUE PROCESS RIGHTS

WICC's denial of Petitioner's witnesses, video, and audio evidence without an explanation was a violation of Petitioner's Due Process rights. Under established Supreme Court precedent, inmates have a liberty interest in time credits earned for good conduct. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Therefore, they enjoy certain procedural due process rights in disciplinary proceedings that may deprive them of such time credits, such as the right to call witnesses and present documentary evidence. *Id.* at 566.

However, the right is not absolute. "[P]rison officials are granted a great deal of leeway in addressing inmates' request for witnesses." *Whitlock v. Johnson*, 153 F.3d 380, 386 (7th Cir. 1998). This is because "[t]he operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff*, 418 U.S. at 566. Therefore, prison officials may deny inmates the right to call witnesses "[s]o long as the reasons are logically related to preventing undue hazards to institutional safety or correctional goals." *Ponte v. Real*, 471 U.S. 491, 497 (1985).

12

The Seventh Circuit has indicated that prisons should generally make individualized determinations when deciding to deny inmates' requests to call witnesses, *Whitlock*, 153 F.3d at 386, but allows prisons to exclude classes or categories of witnesses when "the prison officials demonstrate that the reasons for excluding the class apply with equal force to all potential witnesses falling within that category." *Id.* at 387.

Illinois has established thorough adjustment committee hearing procedures that comport with *Wolff*. *See* 20 Ill. Adm. Code 504.80. Pursuant to the regulations, inmates may request witnesses at disciplinary hearings by complying with the procedure for submitting witness request slips in each living unit. *See id.* at 504.80(h)(3). If the witness requests are not received prior to the hearing, the Committee may deny them. *Id.* If the Committee receives a timely request for a witness and denies it, the regulations require that it provide a written reason. *Id.* at 504.80(h)(4). In this way, the Committee is given the necessary discretion to allow inmates to call witnesses or deny witness requests.

Petitioner's Offender Disciplinary Report for the first incident clearly states that Petitioner requested "R1 B-Wing Camera" and "I/M Leamon/Cox," as evidence to show that he was on the wing. (Doc. 1-1 at 22). Petitioner's Offender Disciplinary Report for the second incident clearly states that Petitioner requested "R1 B-Wing Camera" and "phone recordings," as evidence to show that Officer Watson was assaulting him at all hours, that he ran for the door for a lieutenant because Officers Roberts and Pool were blocking him, and that he was assaulted. (Doc. 19-1 at 3). Additionally, in Petitioner's written statement about the event, Petitioner requested

13

the camera evidence again; he ended his written statement saying "See the Camera" and "Please look at the times listed." (Doc. 1-1 at 16).

Petitioner's due process rights were violated because he requested the witnesses and evidence and they were summarily denied without explanation. WICC has provided no explanation for denying Petitioner's witness requests. The Adjustment Committee Report and the Grievance Officer's Report simply read that no witness was requested. (Doc. 1-1 at 9, 21). Furthermore, the Adjustment Committee Report indicates that they received Petitioner's written statement, but does not reflect Petitioner's request for camera evidence that the written statement contained. (Doc. 19-1 at 5). WICC gives no reasons for denying Petitioner's witness requests and his request to present video and audio evidence.

Instead, Respondent argues that Petitioner has not proven that he properly submitted the witness request. In support, Respondent provides a string of citations where courts affirmed disciplinary decisions because prisoners did not provide evidence to prove that they properly submitted the request. However, none of these cases are binding on this Court. Furthermore, this Court is not convinced of the feasibility of this argument. Petitioner has consistently alleged that he copied the disciplinary reports and turned a copy in. (Doc. 19-1 at 22). The Court is disinclined to put the burden of proving that he submitted the form onto the Petitioner. Petitioner is in a poor position to prove that he properly submitted something, because he is confined as an inmate and he has limited access to resources.

The Court is likewise unconvinced that Petitioner simply forgot to submit the form, as Respondent alleges. (Doc. 63 at 7). As Respondent has previously argued,

14

Petitioner has been subject to frequent disciplinary reports and subsequent litigation. (Doc. 19 at 10-11). Additionally, Petitioner asserts that he has been allowed to submit requests in this manner previously. (Doc. 23 at 6). The Court finds it unlikely that Petitioner simply forgot to submit the request. Therefore, the Court finds that it was a due process violation to deny Petitioner the evidence without explanation.

### B. HARMLESS ERROR DOCTRINE

The Court cannot find that the errors were harmless. Once procedural due process violations have occurred, the Court must determine whether the errors were harmless. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (explaining that the harmless error analysis is applied to prison disciplinary decisions); *see also Hayes v. Thompson*, 637 F.2d 483, 493 (7th Cir. 1980) (applying harmless error analysis to reviews under 28 U.S.C. § 2254 challenges of prison disciplinary proceedings). The Court had previously denied Petitioner's Petition, because the errors were harmless, as evidenced by his state criminal conviction. However, the conviction has been vacated and the Court cannot find that the errors were harmless. As the United States Court of Appeals for the Seventh Circuit noted, if the missing evidence supported Mr. Donelson's story about the assault, then it would undermine the committee's decision. *Donelson v. Pfister*, 811 F.3d 911, 918 (7th Cir. 2016). Therefore, the Court cannot find that the procedural due process errors were harmless.

Furthermore, because the conviction was vacated, the Court cannot find that Petitioner is collaterally estopped from arguing his innocence. Under Illinois law, collaterally estoppel can be applied when several conditions are met, including the condition that there is a final judgment on the merits in the prior adjudication. *Am.*

15

*Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000). A final judgment occurs in Illinois criminal cases when a sentence is imposed. *Talarico v. Dunlap*, 667 N.E.2d 570, 573 (Ill. App. Ct. 1996). Because of the conviction was vacated and Petitioner was not sentenced, Petitioner cannot be collaterally estopped from asserting his innocence.

## V. CONCLUSION

Because the Court cannot find the due process errors harmless, Petitioner's Petition for Writ of Habeas Corpus is granted. The Illinois Department of Corrections shall conduct a rehearing on Petitioner's two disciplinary reports within 120 days from the date of this order, or in the alternative, restore Petitioner's one year of lost good time credit.

IT IS THEREFORE ORDERED that Petitioner's Motion to Alter or Amend Judgment (Doc. 83) is GRANTED. The Court's Order dated December 20, 2016 (Doc. 80) and the accompanying Judgment (Doc. 81) are VACATED. Petitioner's case is REOPENED.

Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is GRANTED. The Illinois Department of Correction shall conduct a rehearing within 120 days from the date of this order on the Petitioner's two disciplinary reports, or in the alternative, restore Petitioner's one year of lost good time credits.

The Court DISMISSES AS MOOT Petitioner's remaining motions (Docs. 87 and 89).

The Clerk is DIRECTED to enter FINAL JUDGMENT and CLOSE the case.

Entered this __13th__ day of February, 2016.

                                                            s/ Joe B. McDade
                                                           JOE BILLY McDADE
                                      United States Senior District Judge